IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON B., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 20 C 6910 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Sharon B.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons discussed below, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 18] is granted, and the Commissioner's Motion for Summary Judgement [ECF No. 23] is denied.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

## PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits on May 16, 2017, alleging a disability beginning on September 9, 2013. (R.20). At the administrative level, the application was denied initially on October 19, 2017, and upon reconsideration on December 21, 2018. (R.20). Claimant then requested a hearing before an Administrative Law Judge ("ALJ"). (R.20). She appeared and testified at a hearing on February 21, 2020 before ALJ Janet Akers and was represented by counsel at the hearing. (R.20). An impartial vocational expert ("VE") also testified during the hearing. (R.20). On March 31, 2020, ALJ Akers issued a decision, finding Claimant was not disabled, and denied her application for disability benefits. (R.20-30).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found Claimant had not engaged in substantial gainful activity during the period from her alleged onset date of September 9, 2013, through her date last insured, which was December 31, 2017. (R.22). At step two, the ALJ found Claimant had the following severe impairments: fibromyalgia, nocturnal chocking/esophageal spasm, obesity, irritable bowel syndrome ("IBS"), and mesenteric panniculitis. (R.23). At step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.23). In particular, the ALJ considered

listings 3.02, 5.06, 5.07, 11.0 and 11.14 and concluded that Claimant did not meet or medically equal the severity of those listings. (R.23).

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform sedentary work as defined in 20 CFR 404.1567(b) and with the following limitations: "she can alternate or change position every 30 minutes for 1-2 minutes while remaining at the workstation and no change in work process. She can occasionally climb ladders, ropes, or scaffolds, and frequently stoop, kneel, crouch, and crawl. She can frequently handle, finger, and reach in all directions, bilaterally. She can tolerate frequent exposure to irritants and chemicals. She cannot perform production work such as assembly line work, but any time off task can be accommodated by normal breaks." (R.23). Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a utilization review nurse and that, based on the testimony from the VE, Claimant would be able to perform her previous job. (R.28).

At step five and relying on the VE's testimony, the ALJ concluded that, considering Claimant's age, education, past work experience, and RFC, Claimant also is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R.23-24). Specifically, the VE identified jobs including unskilled light occupations such as inspector, sorter, and office helper that Claimant could perform and that are available in significant numbers in the national economy.

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

(R.24). The ALJ then concluded that Claimant was not under a disability from her alleged onset date of September 9, 2013, through December 31, 2017, her date last insured. (R.24).

The Appeals Council denied Claimant's request for review on September 24, 2020 (R.1-6), making the ALJ's decision the final decision of the Commissioner. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Thereafter, Claimant filed this lawsuit seeking judicial review, and this Court has jurisdiction to review this matter. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, she bears the burden under the Social Security Act to bring forth evidence that proves her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005); 20 C.F.R. § 416.920)). The claimant

4

bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S.Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant argues the ALJ's decision cannot stand in this case because: (1) the ALJ incorrectly assessed Claimant's RFC; (2) the ALJ incorrectly evaluated the opinion of Claimant's treating physician; and (3) the ALJ erred by discounting Claimant's reported subjective symptoms and limitations. The Court addresses Claimant's argument below.

**A. RFC Assessment**

Claimant argues the ALJ erred in finding that she could perform sedentary work. Claimant's Brief [ECF No. 18], at 4-8. Specifically, the ALJ found Claimant had severe impairments that reasonably would have produced some of the symptoms she experienced, but notwithstanding those symptoms, Claimant could perform a reduced range of sedentary work. (R.23-24). The ALJ also acknowledged that Claimant suffered fatigue and pain which affected her ability to concentrate. (R.24). The ALJ, however, concluded that Claimant's statements about the "intensity, persistence, and limiting effects" of her symptoms "are inconsistent because she could perform personal care with assistance, occasionally prepare simple meals, watch television,

6

and perform light household chores with rest periods." (R.24). Claimant contends, among other arguments, that the ALJ's analysis is deficient because she did not explain how Claimant could engage in substantial gainful activity when she frequently needed to rest or lie down during the day and/or in between tasks depending on her pain and/or fatigue. The Court agrees with Claimant.

An ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). An ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but the ALJ must build a logical bridge from the evidence to her conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). It is well-settled law that mere boilerplate statements and conclusions cannot support an ALJ's decision, and an ALJ must set forth "specific reasons" for discounting subjective reports of symptoms. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *Steele v. Barnhart,* 290 F.3d 936, 941-42 (7th Cir. 2002).

In the Court's view, the ALJ did not sufficiently explain why she concluded the objective evidence shows Claimant's limitations are not as severe or persistent as Claimant alleges and did not build a logical bridge from the evidence to her conclusion. At the hearing, Claimant testified that she suffered pain and muscle spasms that disturbed her sleep and affected her concentration. (R.42). Claimant said she could stand or walk for 10 to 15 minutes before needing to stop due to fatigue, pain, and muscle spasms in her back. (R.44). She also said she rested throughout the

7

day due to fatigue and could not complete tasks without breaks in between. (R.43). Claimant further testified that resting was difficult at times because sitting would cause pain in her back, legs, and arms and after sitting for 20 to 30 minutes she would need to shift positions or lay down. (R.44). Claimant estimated that she would lie down five or more times a day depending on pain, and she testified that her pain and fatigue forced her to rely on her husband to complete household activities. (R.44). Claimant also said that her pain medication caused muscle weakness, general fatigue, clouded her thinking, and affected her concentration and that even with medication, she still experienced pain. (R.44-46).

The ALJ summarized Claimant's treatment records and the medical opinion evidence and concluded that Claimant had the RFC to perform a limited range of sedentary work based on "the totality of evidence, particularly conservative treatment notes, consultative examination findings, and reported activities of daily living." (R.28). Those general, conclusory statements, however, do not provide enough detail or sufficient explanation about how the evidence, and what evidence in particular, supported the ALJ's RFC analysis, particularly in light of some conflicting evidence in the record and Claimant's testimony. That one sentence in the ALJ's opinion comprises the totality of the ALJ's rationale for her RFC. The Court cannot recreate its own a logical bridge between the evidence and the ALJ's RFC conclusion. The ALJ must connect those dots and provide her own explanation.

It also is well-settled law that an ALJ cannot cherry pick which evidence to evaluate and disregard other critical evidence. *Scrogham v. Colvin,* 765 F.3d 685,

8

696-99 (7th Cir. 2014). The Court cannot assume or speculate about what the ALJ was thinking to support the RFC limitations. A recitation of Claimant's medical history and her treatment records is not enough. The ALJ must build a logical bridge from the evidence to her conclusion and the ALJ did not provide that explanation in this case. The ALJ did not provide a sufficient explanation of how the record evidence supported her determination that notwithstanding Claimant's limitations she is capable of performing a reduced level of sedentary work. The Court is left with two critical and dispositive questions: (1) how does the clinical evidence support the ALJ's RFC determination; and (2) how does the ALJ specifically account for Claimant's fibromyalgia in the RFC analysis? The ALJ's opinion does not sufficiently answer these questions.

For example, the ALJ stated Claimant's medical records contained "largely normal physical examinations" and that her limitations were accounted for sufficiently in the RFC. (R.28). Discounting Claimant's complaints of pain and fatigue because she had "largely normal physical examinations," however, reflects a misunderstanding of fibromyalgia. The Seventh Circuit repeatedly has cautioned that "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018). *See also Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018). For this reason, "courts have been very clear that objective testing is not a reliable standard by which an ALJ can go about assessing the credibility of a claimant's fibromyalgia claims." *Heuschmidt v. Colvin,* 2015 WL 7710368, at *5 (N.D. Ill. Nov. 30, 2015). Instead, an

9

ALJ must be mindful that the symptoms of fibromyalgia are "entirely subjective" and "[t]here are no laboratory tests for [its] presence or severity." *Sandra R.W. v. Comm'r of Soc. Sec.*, 2018 WL 5717202, at *5 (S.D. Ill. Nov. 1, 2018) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)); *Gebauer v. Saul*, 801 F. App'x 404, 409 (7th Cir. 2020) (fibromyalgia is "marked by subjective and fluctuating symptoms").

Although the ALJ did acknowledge that there were "intermittent reports of high pain and fatigue" that "support greater exertional limitations" (R.28), she did not address specifically the pain, fatigue and limited concentration that Claimant said required her to rest or lie down, and the ALJ also did not explain why some of Claimant's subjective symptoms and limitations were not included in the RFC. In the Court's view, some of Claimant's subjective symptoms and limitations would be inconsistent with an ability to engage in substantial gainful employment. The Court is not now substituting its view of the evidence for the ALJ's. But the Court (and the applicable law) require more from the ALJ to explain how she came to her conclusions.

It also is not clear how the ALJ assessed Claimant's activities of daily living. Activities of daily living can provide valuable insight into a claimant's functional abilities, but an ALJ must be careful not to go too far and "equate the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Carradine v. Barnhart*, 360 F.3d 751, 755-

10

56 (7th Cir. 2004); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). The ALJ seemed to rely on the fact that Claimant served as executor of her father's estate and traveled sporadically to Tennessee to attend to those duties. (R.25). Without more of an explanation, the Court is not clear how being an executor of her father's estate negated Claimant's fatigue and pain or was sufficient evidence that Claimant would be capable of full time work. In addition, the ALJ noted that Claimant "could perform personal care with assistance, occasionally prepare simple meals, watch television, and perform light household chores with rest periods." (R.24). It is unclear to the Court how Claimant's ability to do these activities of daily living with assistance and rest periods is inconsistent with her testimony that she suffered from disabling pain and fatigue or is consistent with the ability to engage in full-time work.

Most significant in the Court's view is the ALJ's failure to specifically address Claimant's testimony about her pain. The Seventh Circuit repeatedly has noted that "pain alone can be disabling," even in the absence of objective test results that evidence a disabling condition. *Stark v. Colvin*, 813 F.3d 684 (7th Cir. 2016); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Although the ALJ is not required to accept Claimant's testimony about her pain or any other complaints without question, the ALJ must minimally explain why she did not fully credit Claimant's testimony and how she accommodated the limitations she did credit. The ALJ did not do so here.

The Court cannot, and will not, make any assumptions about how the ALJ evaluated and weighed the evidence and Claimant's testimony. *Briscoe*, 425 F.3d at

11

352 (finding that an ALJ must explain how the evidence supports their specific functional restrictions); *Scott v. Astrue*, 647 F.3d 734, 740-41 (7th Cir. 2011) (holding that an ALJ must consider claimant reports on the limiting pain of their medically determinable impairments). For these reasons, the Court finds that this case must be remanded for further explanation from the ALJ.

### B. Treating Physician

Claimant also argues that the ALJ erred in rejecting the opinion of her treating physician, Sara Everakes, M.D. Claimant's Brief [ECF No. 18], at 9-12. The medical records show Dr. Everakes began treating Claimant in May 2017, and that she completed a Fibromyalgia Residual Functional Capacity Questionnaire in November 2018, which was ten months after Claimant's date last insured, and completed a second Questionnaire in February 2020. (R.27-28; 786-788; 1334-1336). Dr. Everakes diagnosed Claimant with frequent and severe migraines, IBS, tender points, poor sleep, and chronic fatigue, among other symptoms. (R.786; 1334). She also found that Claimant had widespread pain that was precipitated by changing weather, fatigue, and stress and that these symptoms frequently interfered with her concentration. (R.786). Among other limitations, Dr. Everakes opined that Claimant could sit for only one hour and stand for 15 minutes before needing to sit down and that she could sit for less than four hours in a day, could stand or walk for less than two hours in a day, and would require unscheduled breaks four times a day for 10 minutes at a time. (R.787). Dr. Everakes also opined Claimant's condition would cause her to be absent from work more than four days a month. (R.788).

12

Claimant argues that the ALJ erred in her assessment of Dr. Everakes' opinion and did not sufficiently give credit to the limitations she found. The Court does not read the ALJ's assessment of the Dr. Everakes' treatment records and her medical opinion the same way Claimant does. The Court, however, does agree with Claimant that there are some inconsistencies in the ALJ's analysis that require remand for further explanation.

The Commissioner asserts, among other arguments, that the ALJ properly discounted Dr. Everakes' opinion and found it less persuasive because it was authored ten months after Claimant's date last insured. Commissioner's Brief [ECF No. 24], at12 (citing R.27). Claimant, however, correctly points out that even though the ALJ noted that Dr. Everakes' opinion was dated ten months after Claimant's date last insured, the ALJ did not specifically say that was a reason she found it less persuasive. The Court agrees with Claimant that the Commissioner cannot defend the ALJ's decision on any ground that the ALJ did not articulate. *See e.g., Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").

That said, however, it would not be unreasonable for the ALJ to find Dr. Everakes' opinion less persuasive since it was authored ten months after Claimant's date last insured (December 31, 2017), particularly if there were no opinion of record during the most relevant time period (prior to the expiration of Claimant's date last insured) that concluded Claimant was not capable of working. However, on February

13

14, 2020, Dr. Everakes completed a second Fibromyalgia Residual Functional Capacity Questionnaire to which the ALJ does acknowledge and cite in her opinion. (R.27) (citing 18F). In that Questionnaire, Dr. Everakes stated that Claimant has been limited as described further in the Questionnaire since May 2017. (R.1366). The Court recognizes that this opinion comes long after Claimant's date last insured, but it does undercut to a certain extent the ALJ's notion that Dr. Everakes' opinions should be discounted because they come after Claimant's date last insured. Dr. Everakes specifically stated in her February 2020 opinion that Claimant's symptoms and limitations have existed since May 2017, which is during the relevant time period. (R.1336). Because the rationale for the ALJ's decision to discount Dr. Everakes' opinion and the evidence upon which she relied to support that opinion is not clear, the Court cannot, and will not, speculate about it, and remand is required.

Similarly, the Court is puzzled by the ALJ's reliance on the "performance status" records from the Eastern Cooperative Oncology Group, which the ALJ found "indicated" Claimant was able to perform light or sedentary work, such as light housework or office work. (R.28). The Court notes that these records also come after Claimant's date last insured. If, in fact, the ALJ did not credit Dr. Everakes' opinion, in part, because her opinion came ten months after Claimant's date last insured, then it is internally inconsistent to rely on the records from the Eastern Cooperative Oncology Group as support for a finding that Claimant is capable of working because those records also came after December 31, 2017 (Claimant's date last insured) and potentially are outside of the frame of relevant inquiry. (R. 20-21, 1274, 1328). In the

14

Court's view, the ALJ erred in not explaining how medical evidence that comes after Claimant's date last insured is appropriate to consider and rely upon when determining Claimant's ability to work prior to December 31, 2017, while at the same time the ALJ discounted other evidence in the record after Claimant's date last insured that was more favorable to Claimant. (R.28); *see e.g. Rohan v. Barnhart*, 306 F.Supp.2d 756, 768 (N.D. Ill. 2004) (finding that an ALJ cannot rely on evidence outside the period at issue to determine a claimant's physical and mental state within the period at issue). Therefore, remand is required.

## C. Remaining Arguments

Even though the Court could stop at this point since the case is being remanded, the Court will address one of Claimant's remaining arguments with which it disagrees to provide a more complete picture of how the Court evaluated Claimant's arguments and the ALJ's opinion. Claimant argues that the ALJ erred by discounting her alleged fibromyalgia symptoms and limitations because she worked for many years after her fibromyalgia diagnosis. Claimant's Brief [ECF No. 18], at 14 (citing R.24-25). The Commissioner says the ALJ is permitted to discredit Claimant's testimony because she actually worked for many years despite having fibromyalgia. Commissioner's Brief [ECF No. 24], at 7. *Richard C. v. Saul*, 2020 WL 1139244 (N.D. Ill. Mar. 9, 2020). That may be true and is one interpretation of the evidence. Claimant, however, testified that she left her job due to fatigue, pain, and unrestful sleep. (R.41-42).

15

The Commissioner responds that the ALJ is not obligated to accept Claimant's testimony that she left her job because of her disability symptoms because there also is evidence in the record that Claimant lost her job because her employer was downsizing. Commissioner's Brief [ECF No. 24], at 7-8. The ALJ, however, did not identify any specific reason for discounting Claimant's hearing testimony in favor of evidence that her employer downsized. (R.25). In the Court's view, Claimant's contemporaneous statement to the medical provider that she stopped working because her company downsized is more persuasive than her testimony at the hearing before the ALJ seeking disability benefits. But the Cort cannot rely on that explanation since the ALJ did not say she was relying on it, and the Court will not speculate about what was in the ALJ's mind.

The Court expresses no opinion on Claimant's remaining arguments, or the decision to be made on remand. But the Court does encourage the Commissioner to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that [she] may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## CONCLUSION

Accordingly, for all of the reasons set for in the Court's Memorandum, Opinion and Order, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 18] is granted, and the Commissioner's Motion for Summary Judgement [ECF No. 23] is denied. This matter is remanded to the Social Security Administration for proceedings consistent with this Opinion.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   August 8, 2023